[Civ. No. 10765.   First Appellate District, Division One.—February 16, 1939.]

T. G. PAINTER, Plaintiff, v. NELS BERGLUND et al., Defendants; F. M. KNAPP, Appellant; CONTINENTAL CASUALTY COMPANY, Respondent.

Burton B. Brace and J. Adrian Palmquist for Appellant.

Crozier C. Culp for Respondent.

WARD, J.—Upon the application of H. R. Scott, engaged as a real estate broker and doing business under the name and style of Pacific Sales and Finance Company, the Continental Casualty Company, a corporation, as surety, issued a surety

bond for the benefit of "H. R. Scott, and his salesmen and employees" pursuant to the provisions of the California Real Estate Act (Stats. 1919, chap. 605) in the sum of $2,000, conditioned for the faithful performance by the said broker, his salesmen and employees respectively, in their dealings with the public. F. M. Knapp, during the period of the life of the bond was a real estate salesman in the employ of broker Scott. Plaintiff, T. G. Painter, filed an action alleging the perpetration of a fraud as joint tort feasors against certain operators and conductors of an automobile camp, together with Scott and Knapp as the broker and salesman respectively, in connection with the sale and assignment of the leasehold interest of the auto court. The Continental Casualty Company was named not as a participant of the alleged fraud but as surety under and by virtue of the bond. The plaintiff obtained a judgment against Scott, Knapp and the surety company for $1650, interest at the legal rate until paid, and the costs of the action. Judgment was rendered in favor of the leaseholders and operators of the automobile camp. Neither Scott nor Knapp satisfied the judgment and the surety company after a period of negotiations paid $1400 in lieu of the face of the judgment, and received as consideration therefor the following assignment: "In consideration of the sum of Fourteen Hundred ($1,400.00) Dollars, in hand paid, T. G. Painter hereby assigns to Continental Casualty Company that certain judgment heretofore obtained on the 21st day of April, 1933, in the matter of the above entitled action against H. R. Scott. Dated this 15th day of June, 1933. T. G. Painter, Plaintiff. H. W. Brunk, Attorney for Plaintiff." On October 23, 1937, the surety company secured a writ of execution against Knapp and Scott. The writ sets forth that the judgment, as appears of record, was duly assigned to the Continental Casualty Company and that such company was the owner thereof. Knapp presented a motion to recall the execution, and for an order to cause the judgment to be fully satisfied of record. The motion was denied and from the order of denial defendant Knapp has taken this appeal.

Respondent surety company asserts and argues that under the facts it is entitled, not only by reason of the doctrine of equitable subrogation but by virtue of the assignment of the judgment, to enforce the execution against either co-

defendant Knapp or Scott. Appellant Knapp cites sections 1638 and 1639 of the Civil Code and contends that the designation of "H. R. Scott" is conclusive and is an elimination of Knapp as a judgment debtor under the terms of the assignment. If it is appellant's claim that the intention of the parties to this writing should be ascertained from the writing alone, that position was negatived by filing the affidavit of plaintiff Painter which was attached to the motion to recall the execution. The affidavit was filed for the purpose of ascertaining the intention of the assignor. The affidavit relates in part as follows: "that in assigning said judgment it was the intent of this affiant to assign only his right and claim against H. R. Scott and in giving said satisfaction it was the purpose and intent of affiant to fully and completely satisfy said judgment as against all other defendants named therein, including the defendant F. M. Knapp; that as far as this affiant is concerned, said judgment is fully satisfied". If this affidavit could be considered, the testimony of the attorney who negotiated the compromise of the judgment was likewise pertinent and relevant, and in passing it may be well to note that no objection was interposed to this latter testimony, which indicates that the assignment was directed against each of the tort feasors. In denying the motion to recall the execution, the court impliedly found that the words "against H. R. Scott" were words of description and not of limitation, a finding which must be approved. It must be borne in mind that the surety at some period possessed the right of subrogation. It is inconceivable that respondent surety company should deliberately attempt to limit its right to obtain redress against one only of the joint tort feasors. The judgment could be transferred as property just as other property of a similar nature. (*Curtin* v. *Kowalsky,* 145 Cal. 431 [78 Pac. 962].) It need not be in writing and is subordinate to any rights of subrogation. (*Meyers* v. *Bank of America etc. Assn.,* 11 Cal. (2d) 92 [77 Pac. (2d) 1084].) In other words, the right of the surety company to pursue the assigned judgment is dependent upon subrogation rather than upon the assignment, though the assignment in this case plays a considerable part in establishing the right of the surety to subrogation.

Appellant in great measure relies upon the case of *Meyers* v. *Bank of America etc. Assn., supra.* In that case an office

manager received certain checks, forged the name of the payee and negotiated with a third party who paid full value therefor; the third party deposited the checks in defendant bank which in turn received payment therefor from the respective drawees. The employer was indemnified by the surety company for the default of his office manager. The employer assigned the bond and any cause of action against the bank, together with the right to maintain such action in the name of the assignor. The surety company caused such an action to be instituted against the bank and the party who had originally paid the checks in full. It was held that the surety company was not entitled to be subrogated to any claim the employer might have against the bank. The theory of the Meyers' decision is that the bank was not a wrongdoer and had received no benefit from the transaction, and that the right to maintain such an action depended upon the respective equities of the parties.

In the case at bar appellant Knapp was one of the principals who participated in the fraud perpetrated upon Painter, and in equity and good conscience should be primarily, with his tort feasor, responsible for the damages. The Supreme Court of Minnesota, in *Northern Trust Co.* v. *Consolidated Elevator Co.*, 142 Minn. 132 [171 N. W. 265, 268, 4 A. L. R. 510], said: "The right to recover from a third person does not stand on the same footing as the right to recover from the principal. As to the latter, the right is absolute—as to the former, it is conditional." In the *Estate of Whitney*, 124 Cal. App. 109, 117 [11 Pac. (2d) 1107], it is said: "While section 2848 of the Civil Code provides that a surety, upon satisfying the obligation of his principal, is entitled to be subrogated to that extent to all remedies which the creditor has against the principal, the question whether the obligation which is satisfied is in fact the obligation of the particular principal is to be decided in accordance with the rules of law and principles of equity."

Section 709 of the Code of Civil Procedure provides in part as follows: "and when a judgment is against several, and is upon an obligation of one of them, as security for another, and the surety pays the amount, or any part thereof, either by sale of his property or before sale, he may compel repayment from the principal. In such case the person so paying or contributing is entitled to the benefit of the judg-

ment, to enforce contribution or repayment, if, within ten days after his payment, he file with the clerk of the court where the judgment was rendered, notice of his payment and claim to contribution or repayment. Upon a filing of such notice, the clerk must make an entry thereof in the margin of the docket.''

On June 15, 1933, there was deposited with the bank in Berkeley certain documents, including the assignment and a draft dated June 14th signed by a representative of the surety company and drawn upon a bank in Chicago. Instructions were left with the Berkeley bank to deliver the documents to the surety company's attorney when the last-named bank should be notified that the draft had been paid. Our attention has not been called to the precise date upon which Painter received the $1400 but we assume that in the ordinary course of business the bank in Berkeley forwarded the amount on the same or a subsequent date to the attorney for Painter. The bank complied with the escrow instructions by forwarding the assignment and other papers to the attorney for the surety company on June 24, 1933. Five days later the assignment was filed and the county clerk endorsed upon the docket register "Assigned to Continental Casualty Company".

Section 709, *supra,* does not provide for a particular form of notice and does not specify that the notice shall be given or served upon anyone except the county clerk. A notice of assignment of the judgment having been filed and docketed within ten days after the surety had paid an amount which plaintiff accepted in full payment of the face of the judgment, the question arises, was the notice sufficient and was the proper procedure adopted to entitle the surety company to subrogation. The purpose of section 709, *supra,* was to announce a convenient method of procedure to enable a debtor, who held the right of a judgment, to claim and execute for the whole or the proportion of the judgment to which such debtor might be entitled. The section gives to the co-defendant or surety entitled to contribution or repayment, the remedy of using .the judgment itself as a summary proceeding instead of seeking relief by slow and burdensome steps to the same end. (*Forsythe* v. *Los Angeles Ry. Co.,* 149 Cal. 569 [87 Pac. 24] ; *Holmes* v. *Hughes,* 125 Cal. App. 290 [14 Pac. (2d) 149] ; *McIntosh* v. *Funge,* 128 Cal. App.

70 [16 Pac. (2d) 1006].) Execution is a process in an action to carry into effect the directions in a decree or judgment. Prior to the assignment by plaintiff to the surety the judgment was ripe for execution and plaintiff held a vested right to use the process of the court to satisfy the judgment. The rights of plaintiff were transferred to defendant surety company. The surety company, having satisfied plaintiff's claim for damages, also held rights of subrogation. The surety company was entitled to repayment from the insurees. Any objection raised by appellant Knapp is primarily based upon the procedure adopted.

Under the surety's right of subrogation, the payment gave rise to an assignment by operation of law, and a formal transfer from plaintiff to the defendant surety company was not necessary, but the filing of the written assignment was, in the absence of statutory direction, a sufficient notice of payment and claim to repayment. In this case the surety paid the liability that it contracted to pay and was entitled to all the benefits of the doctrine of subrogation. It stood in the position of the plaintiff with the limitation that it could recover by execution upon the judgment only the amount paid, with interest and costs. (Sec. 2848 of the Civ. Code.) The surety company has not sought to speculate or profit by the payment to plaintiff of $1400 in lieu of a judgment of the total sum of $1689. Appellant Knapp was not injured by a reduction of the amount of the judgment.

Section 2847 of the Civil Code provides that the payment by the surety may be with or without legal proceedings, and section 2848 states: "A surety, upon satisfying the obligation of the principal, is entitled to enforce every remedy which the creditor then has against the principal to the extent of reimbursing what he has expended, and also to require all his co-sureties to contribute thereto, without regard to the order of time in which they became such." Appellant contends that the word "remedy" as used in the section does not mean that the surety company had the right to obtain an execution; that an execution is not within the legal definition of "remedy". The words "action", "cause of action", "right", "remedy" and "redress" are often used in a legal sense so that one implies another; in fact they are so related that one at times, of necessity, includes the other. "For every wrong there is a remedy." (Sec. 3523, Civ. Code.)

This maxim of jurisprudence bestows upon the person who may be wronged the right to seek redress in an action, and the basis or ground thereof is denominated the cause of action. The expression ''cause of action'' has been held to mean everything that is requisite to show that an action is maintainable, and where a conflict of authority is found on this question it generally arises in cases dealing with the subject of jurisdiction. The word ''cause'' is sometimes used synonymously with the terms ''case'' or ''action''. The word ''action'' has been defined as the legal demand of one's rights or as the instrument to obtain redress for wrongs. (1 Cor. Jur. 924 et seq.) Section 20 of the Code of Civil Procedure provides: ''Judicial remedies are such as are administered by the courts of justice, or by judicial officers empowered for that purpose by the constitution and statutes of this state.'' ''Remedy'' is a more extensive term and refers to the method by which the action is effectuated. (*Frost* v. *Witter*, 132 Cal. 421 [64 Pac. 705, 84 Am. St. Rep. 53].) ''Remedy'' is not redress or relief, but is the means by which a wrong is redressed and relief obtained. A writ is an order in writing issued by a competent official in a judicial proceeding and, as applied to execution in civil cases, is part of the remedy to effectuate the action by the enforcement of the judgment.

The cases cited by appellant refer principally to choses in action not reduced to judgment, and are not controlling in a matter wherein execution after judgment has been resorted to as a proceeding under the doctrine of subrogation for the purpose simply of reimbursement. In the latter instance a separate action on the assignment or in *assumpsit* would be an idle act. (Civ. Code, sec. 3532.) ■ The claim that the statute having run against the action on an implied *assumpsit*, the right to subrogation is barred, is without merit. The surety succeeded through subrogation to all the rights and remedies that the plaintiff held in relation to the judgment, including the remedy of execution within five years after the entry of the judgment. (Code Civ. Proc., sec. 681.)

The order is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1939, and an applica-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 17, 1939.