Filed 6/6/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WERTHEIM, LLC, | B277633 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC328263) |
| v. | |
| CURRENCY CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark A. Borenstein, Judge.  Reversed and remanded.

The Law Offices of F. Jay Rahimi, F. Jay Rahimi; Matthew D. Kanin; AlvaradoSmith, W. Michael Hensley for Plaintiff and Appellant.

Krane & Smith, Jeremy D. Smith, Daniel L. Reback; Diem Law, Robin L. Diem for Defendant and Respondent.

———————————————

After Wertheim LLC obtained a money judgment against Currency Corporation, Currency obtained a bond to secure the judgment and appealed.  We affirmed the judgment and issued a remittitur in July 2012.  Wertheim sought to satisfy the judgment from the appeal bond but Currency blocked disbursement.  After the issuer deposited the bond funds with the superior court and withdrew itself from the dispute, Wertheim and Currency litigated their respective entitlement to the funds, resulting in another trial and two more appeals that ultimately determined the parties' rights under the judgment.

In 2016, Wertheim moved for postjudgment enforcement costs pursuant to Code of Civil Procedure section 685.080,[1] which requires that such costs be sought by noticed motion before the judgment is "satisfied."  The trial court denied Wertheim's motion as untimely on the ground that the bond issuer's deposit of appeal bond funds with the superior court satisfied the judgment long before Wertheim's motion, notwithstanding Currency's successful efforts to forestall disbursement.

We reverse.  Disputed funds on deposit with the superior court do not satisfy a judgment for purposes of a postjudgment motion for costs.  Wertheim's motion was therefore timely, and we remand the matter for the trial court to determine its merits.  Additionally, Currency has moved this court for monetary sanctions against Wertheim and its counsel and to dismiss the appeal based on being frivolous.  We have considered this motion and deny it on the merits.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

## BACKGROUND

### A.      Original Lawsuit

We recount some of the facts from an opinion authored by Division Five of this District in the second of two related appeals, which we will call *Wertheim III*. (*Wertheim, LLC v. Currency Corp.* (Aug. 25, 2017, B270926) [nonpub. opn.].)

In 2009, a jury in Department 44 of the superior court found Currency liable to Wertheim for breach of contract, and awarded it $38,554.48. The trial court entered judgment in this amount in June 2009, and in February 2010 amended the judgment to add $152,164 in attorney fees and costs, bringing the total to $190,718.48. Both parties appealed.

To stay enforcement of the judgment during pendency of the appeal Currency obtained an appeal bond from The Bar Plan Mutual Insurance Company (Insurer) in the amount of $286,078. (See § 917.1 [the perfecting of an appeal does not stay enforcement of the judgment absent an undertaking].)

We affirmed the judgment in May 2012, and issued a remittitur on July 25, 2012. (*Wertheim v. Currency Corp.* (May 22, 2012, B218547) [nonpub. opn.] (*Wertheim I*).)

Nearly 16 months later, on November 18, 2013, Wertheim submitted a claim to Insurer requesting payment of $275,000.37 from appeal bond funds, comprising the judgment of $190,718.48 plus interest at 10 percent. (See §§ 695.210, subd. (b), 685.010, subd. (a) [the amount required to satisfy a money judgment includes the judgment plus interest].) Currency opposed release of any funds on the ground that the amount Wertheim sought was excessive and failed to take into account offsets arising from six liens Currency held against Wertheim from judgments in other cases.

Wertheim moved in department 44 to enforce liability on the appeal bond, which Currency also opposed. The court denied the motion as untimely under section 996.440, subdivision (b), which requires that a motion in the original action to enforce liability on a bond be brought within a year after any appeal is finally determined.[2]

On December 17, 2013, while Wertheim's motion to enforce liability on the appeal bond was pending, Insurer deposited a check in the full amount of the appeal bond ($286,078) to the Clerk of the Los Angeles Superior Court for disbursement "as the Court sees fit."

## B. Parallel Action

Although Wertheim's motion to enforce liability on the appeal bond was untimely under section 996.440, section 996.430 provides that liability on a bond may also be enforced by way of a separate lawsuit, to which both the principal and surety must be joined.[3] Accordingly, Wertheim filed a new lawsuit in February

---

[2] Section 996.440 provides in pertinent part: "(a) If a bond is given in an action or proceeding, the liability on the bond may be enforced on motion made in the court without the necessity of an independent action. [¶] (b) The motion shall not be made until after entry of the final judgment in the action or . . . until [any] appeal is finally determined. The motion shall not be made . . . more than one year after the later of the preceding dates."

[3] Section 996.430 provides in pertinent part: "The liability on a bond may be enforced by civil action. Both the principal and the sureties shall be joined as parties to the action. [¶] . . . . If the bond was given other than in an action or proceeding, the action shall be commenced in any court of competent jurisdiction . . . ."

2014 against Insurer and Currency (the parallel action), which was assigned to department 39.

Insurer, now a defendant, responded by filing a motion pursuant to section 386.5, which allows a defendant holding money in which it claims no interest to apply for an order discharging it from liability and dismissing it from the action (a deposit and discharge motion).[4] Department 39 ultimately granted the motion, discharged Insurer from liability, awarded it attorney fees (charged solely to Wertheim), and dismissed it from the case.

After our colleagues in Division Five affirmed these orders (*Wertheim, LLC v. Bar Plan Mut. Ins. Co.* (Dec. 1, 2016, B268539) [nonpub. opn.] (*Wertheim II*)), the parallel action proceeded to trial on the only remaining issues:  When did interest on the judgment begin and end, and on what principal amount?

Wertheim contended interest began accruing on the full amount of the judgment ($190,718.48) in June 2009, when judgment was entered in the original proceeding, and had never ceased because Wertheim had not yet been paid.  Currency admitted that interest on the original judgment ($38,554.48) began accruing in June 2009 but argued interest on the costs portion of the amended judgment ($152,164) did not begin to accrue until February 2010, when they were added.  Currency

---

[4] Section 386.5 provides in pertinent part:  "Where the only relief sought against one of the defendants is the payment of a stated amount of money alleged to be wrongfully withheld, such defendant may . . . apply to the court for an order discharging him from liability and dismissing him from the action on his depositing with the clerk of the court the amount in dispute . . . ."

5

further argued that interest ceased accruing in July 2012, when our remittitur issued in the original proceeding.

Department 39, Judge Feffer, ultimately found, as pertinent here, that the judgment was "satisfied" on July 25, 2012, the date our remittitur issued, because the funds were theoretically available to Wertheim then, and interest stopped running at that time. The court entered judgment accordingly, and both sides appealed. (The judgment also included an offset of $5,161.56 for two judgment liens held by Currency.)

Division Five held that interest on the full judgment, including the costs portion, began accruing in June 2009, when the original judgment was entered. (*Wertheim III*, *supra*, B270926, at pp. 11-12.)

This ruling effectively vindicated Wertheim's November 18, 2013 claim on the appeal bond for $275,000.37.

Division Five agreed with the trial court that interest stopped running when the judgment was satisfied, but held contrary to the trial court that satisfaction occurred not in July 2012, when our remittitur issued, but December 2013, when Insurer deposited appeal bond funds with the superior court. (*Wertheim III*, *supra*, B270926, at pp. 16-17.) (Division Five also affirmed the trial court's refusal to apply a third lien, in the amount of $8,535.14, to offset the judgment, as Currency had failed to perfect it.)

## C. Motion for Postjudgment Costs

On March 10, 2016, while the cross-appeals in *Wertheim III* were pending, Wertheim moved in the original proceeding for postjudgment attorney fees incurred to date pursuant to section

6

685.080. Such a motion must be filed before the subject judgment has been "satisfied."[5]

Department 44, considering itself bound by department 39's yet-extant finding that the judgment was satisfied in July 2012—which *Wertheim III* later reversed—denied the motion as "untimely due to the finding of [department 39] that the judgment was satisfied in [July] 2012."

Wertheim now appeals this ruling.

Wertheim filed its opening appellate brief before *Wertheim III* was decided, and in it addressed issues that have since been obviated by that opinion.

Currency filed its respondent's brief after *Wertheim III*, raising the new argument that even if, as Division Five held, judgment satisfaction occurred in December 2013 rather than July 2012, Wertheim's motion for postjudgment costs was still untimely because it was not made until March 10, 2016.

To afford the parties an opportunity to address the impact of *Wertheim III*, we invited and received supplemental briefs from both sides.

## DISCUSSION

Wertheim contends the trial court erred in finding its motion for postjudgment costs was made after the judgment was

---

[5] Section 685.080, today's workhorse, provides in pertinent part: "The judgment creditor may claim costs authorized by Section 685.040 by noticed motion. The motion shall be made before the judgment *is satisfied in full*, but not later than two years after the costs have been incurred. . . . [¶] . . . [¶] . . . The court shall make an order allowing or disallowing the costs to the extent justified under the circumstances of the case." (Italics added.)

7

satisfied, because to this day the judgment remains unpaid. It argues *Wertheim III's* holding that the judgment was satisfied in December 2013 pertains only to cessation of interest, not to the timeliness of postjudgment motions. We agree.

## A. Standard of Review and Relevant Law

We review both statutory interpretation and entitlement to attorney fees de novo. (*Conservatorship of Ribal* (2019) 31 Cal.App.5th 519, 524.)

A judgment between two parties is a bilateral construct that finally determines the rights and corresponding obligations of each side. (See § 577 ["A judgment is the final determination of the rights of the parties in an action or proceeding"].) " 'There can be but one final judgment in an action, and that is one which in effect ends the suit in the court in which it was entered, and finally determines the rights of the parties in relation to the matter in controversy.' " (*Bank of America Nat. Trust & Savings Ass'n v. Superior Court* (1942) 20 Cal.2d 697, 701-702.)

"Satisfaction" of such a judgment is also necessarily bilateral, as it both compensates the judgment creditor for harm inflicted by the judgment debtor and insulates the debtor against further claims from the creditor. (See *Borba Farms, Inc. v. Acheson* (1988) 197 Cal.App.3d 597, 605 [satisfaction of a judgment compensates for some harm and bars further recovery].)

### 1. Satisfaction—General Rule

A money judgment may be satisfied—and the judgment creditor compensated and the debtor insulated against further claims—"by payment of the full amount required to satisfy the

8

judgment or by acceptance by the judgment creditor of a lesser sum in full satisfaction of the judgment." (§ 724.010, subd. (a).)[6]

" 'Payment to a judgment creditor is governed by the cases and statutes which govern commercial transactions.' [Citation.] . . . [T]hat means California Uniform Commercial Code section 3310[, which states:] 'Unless otherwise agreed, if a certified check, cashier's check, or teller's check is taken for an obligation, the obligation is discharged to the same extent discharge would result if an amount of money equal to the amount of the instrument were taken in payment of the obligation.' " (*Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 893-894 (*Gray1*).) Therefore, for purposes of judgment satisfaction, "payment" means either (1) the tender of cash or (2) the tender *and acceptance* of a certified check or similar instrument. (See *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 615 (*McQueen*); *Gray1*, at pp. 892-893, 896.)

In other words, because a judgment creditor has the right to demand payment in cash, an unaccepted noncash tender neither constitutes payment nor satisfies the judgment. (*McQueen, supra*, 59 Cal.4th at p. 615; *Gray1, supra*, 233 Cal.App.4th at p. 894.)

## B. Satisfaction for Purposes of Interest Cessation

Interest accrues on a judgment at a rate of 10 percent. (§ 685.010, subd. (a).) Because a judgment creditor may reject a noncash tender, a judgment debtor unable immediately to pay in cash—for example in the case of a sizeable judgment—would be

---

[6] Other modes of satisfaction include offset, a covenant not to enforce, and operation of law. (Legis. Com. com., Deering's Ann. Code Civ. Proc., § 724.010 (2014 ed.) p. 502.)

9

at the mercy of the creditor with respect to interest accumulating after the tender.  But "there is no reason a judgment creditor should continue to earn interest on its judgment after refusing payment of the judgment."  (*Gray1*, *supra*, 233 Cal.App.4th at p. 896.)

Therefore, in section 685.030, titled "Cessation of interest," the Legislature has provided that interest will cease to accrue on a judgment on the date "satisfaction is tendered to the judgment creditor or deposited in court for the judgment creditor." (§ 685.030, subds. (b) & (d); see *Gray1*, *supra*, 233 Cal.App.4th at p. 895 ["Interest on a judgment ceases to accrue [on] . . . 'the date satisfaction is *tendered* to the judgment debtor or deposited in court' "].)[7]

_____

[7] Section 685.030 provides in relevant part:

"(b) If a money judgment is satisfied in full other than pursuant to a writ under this title, interest ceases to accrue on the date the judgment is satisfied in full.

"(c) If a money judgment is partially satisfied . . . interest ceases to accrue as to the part satisfied on the date the part is satisfied.

"(d) For the purposes of subdivisions (b) and (c), the date a money judgment is satisfied in full or in part is the earliest of the following times:

"(1) The date satisfaction is actually received by the judgment creditor.

"(2) The date satisfaction is tendered to the judgment creditor or deposited in court for the judgment creditor.

"(3) The date of any other performance that has the effect of satisfaction."

Although section 685.030 defines this tender or deposit as "satisfaction" of the judgment, it expressly limits the scope of the definition only "[f]or the purposes of" interest cessation. (§ 685.030, subd. (d).) No authority expands this definition for use outside the interest cessation context.

## C. Satisfaction for Purposes of Postjudgment Motions

Pursuant to the Enforcement of Judgments Law (§ 680.010 et seq.), a judgment creditor may claim authorized costs incurred while enforcing a judgment, including authorized attorney fees (§§ 685.040, 685.090). Section 685.080 requires that a motion for such costs be made before the judgment is "satisfied in full." (§ 685.080, subd. (a).) The time limitation is " ' "to avoid a situation where a judgment debtor has paid off the entirety of what he [justifiably] believes to be his obligation in the entire case, only to be confronted later with a motion for yet more fees." ' " (*Gray1*, *supra*, 233 Cal.App.4th at p. 891.) Section 685.080 does not define the phrase "satisfied in full," but absent some legislative indication to the contrary, of which there is none, satisfaction requires payment.

*Comerica Bank v. Runyon* (2017) 16 Cal.App.5th 473 (*Runyon*) illustrates the point. There, the creditor obtained a joint and several judgment against several defendants in the sum of almost $430,000. After some judgment debtors settled with the creditor a balance of $1,350 remained unpaid. One of the debtors then moved for contribution from another debtor pursuant to section 883, which permits a co-judgment debtor to apply on noticed motion for an order determining liability for contribution from other judgment debtors. Such an application

11

must be made before the judgment is "satisfied in full," or within 30 days thereafter.  (§ 883, subd. (a).)[8]

The appellate court held the debtor's application was timely because the creditor had not yet been fully paid—there was an outstanding balance of $1,350—when the application was filed. The court stated that "[a] judgment cannot be satisfied within the meaning of section 883, subdivision (a) until the judgment creditor is paid in full and has no outstanding claim and the obligation of the judgment debtor has been fully extinguished." (*Runyon*, *supra*, 16 Cal.App.5th at p. 482.)

Here, Insurer tendered a certified check or similar instrument in December 2013, when it deposited appeal bond funds with department 39.  However, Wertheim never accepted the funds; it was prevented from doing so when Currency disputed the amount due.  Because Wertheim has not been paid, the judgment has not been satisfied.  Therefore, Wertheim's motion for postjudgment costs, filed on March 10, 2016, was timely.

Currency argues that the definition of judgment satisfaction prescribed by section 685.030 for interest cessation should apply to postjudgment costs motions as well.  No principle or authority supports the argument.  We think the better rule is that described in *Runyon*, which like the instant case involved a

---

[8] Section 883 provides in pertinent part:  "A judgment debtor entitled to compel contribution or repayment pursuant to this chapter may apply on noticed motion to the court that entered the judgment for an order determining liability for contribution or repayment.  The application shall be made at any time before the judgment is satisfied in full or within 30 days thereafter."

post-judgment motion that had to be made before the judgment was "satisfied in full." A judgment is not satisfied for purposes of postjudgment motions until the judgment creditor has been paid.

This rule makes sense from a policy standpoint as well. Sections 685.030, 685.080 and 883, pertaining respectively to interest cessation, postjudgment costs, and postjudgment contribution, vest a measure of control over postjudgment charges in the party to be charged. Section 685.030 enables a judgment debtor to limit its liability for postjudgment interest by tendering satisfaction of the judgment, whether or not the creditor chooses to accept the tender. Section 883 enables a judgment co-debtor to retain the option of seeking contribution so long as the debtor chooses not to satisfy his or her portion of the judgment, and provides a measure of insulation (30 days) should the judgment otherwise be satisfied. Section 685.080 enables a creditor to recoup its postjudgment costs notwithstanding an unperfected tender by filing its motion before accepting the tender. In each case the rights of the party at risk are insulated from unilateral acts of third parties over whom it may have no control.

This rule also works no mischief on the judgment debtor, who could unilaterally avoid further postjudgment costs simply by delivering cash.

In conclusion, satisfaction of a judgment for purposes of interest cessation does not satisfy the judgment for all purposes. In the context of a postjudgment motion for costs, the judgment is not satisfied until the judgment creditor has been paid. Because Wertheim has not yet been paid, its judgment remains unsatisfied, and its postjudgment motion, which otherwise was brought within two years of the costs having been incurred, was

13

timely.  The order denying Wertheim's motion on untimeliness grounds is therefore reversed and the matter is remanded to the trial court for determination of the motion on its merits.

## DISPOSITION

The order is reversed and the matter remanded to the trial court for further proceedings as set forth above.  Appellant is to recover its costs on appeal.

CERTIFIED FOR PUBLICATION

CHANEY, Acting P. J.

We concur:

BENDIX, J.

WEINGART, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.